I'm going to try to reserve one minute for a moment. Bessarabia-Lopez held that California Penal Code 211 is not generic robbery, but it is generic extortion, requiring the use of force, and therefore is a crime of violence for guideline enhancements. But subsequently, the California Supreme Court in Anderson held that 211 can be committed by a purely accidental application of force against the victim. That is not a sufficient mental state for use of force under Supreme Court and circuit law. 211 is not a crime of violence, and the district court here erred in finding to the contrary. Bessarabia-Lopez held that 211 was a crime of violence under the guideline 2L1.2. But it said that it was not generic robbery because it encompassed threats and force against property. However, generic extortion does allow threats against property and therefore found that it was generic extortion. But the definition of generic extortion requires a use of force or threats. Use of force. And that's from the Supreme Court's definition in Shidler. Bessarabia-Lopez had no other basis of decision. It didn't consider the victim. But there's no question that force was used to take her car here. Correct. There has to be the act of taking, and that requires some kinetic force. But the requirement to raise a theft to a robbery is the use of force and resulting in force or fear against the victim. That's the difference between a pickpocket and a robbery. There wouldn't be any question in Anderson that it would satisfy that definition. She was out. She tries to stop the car. The guy runs over her with her own car. That's pretty good force, even if he didn't go there with the idea of running her over. That's true. That is force. But what the requirement is for a crime of violence, for the use of force as defined in Leocal and Fernandez-Ruiz, is that that is an intentional application of force against the victim. It's one thing to actually do the act volitionally. It's another thing to intend it to be an application of force. Now, what would make us think out of Anderson that there was no intention there? There are witnesses who heard her yell, stop. She's on the phone with her stepfather or her mother saying, wait a minute, there goes my car. She's out in the parking lot when she's hit. So what would make us think that Mr. Anderson did not intend to hit her? That is exactly what the California Supreme Court said. They said we are assuming that this was an accidental application of force, and we are holding that an accidental application of force suffices for California to allow. Even if he hadn't hit her, wouldn't that still qualify as robbery under California law? Correct. In fact, if she had seen it and was in fear, subjective fear, because of the car driving at her, that would still be robbery, even if that was unintentional as well. That's the point. Is that not that there is? If she hadn't been home at the time and he comes and takes her car, is that only theft in California that wouldn't qualify as robbery? That's correct, because there is no use of force. There is no application. There is no means of force or fear for taking it. It's the same thing as like a burglary. I mean, people say my house was robbed, but, of course, that's incorrect. It was a theft through a burglary. But if someone's not home and they're not confronted with force or fear, there is no robbery, and it's never charged as robbery. There has to be this extra force or fear. That's part of robbery. That's what the district court and the prosecution below keyed on was to say, well, there's this additional force that raises theft or robbery. No question about that. That's not being denied. What's important, though, what's important here is what's the mental state associated with that extra force? Is it intentional, or is it merely reckless or negligent? And Anderson said that it's negligent, because it can be purely accidental. But Leocal said that is not enough, because in Leocal we had the same situation. We had someone who was intentionally driving the car. Even though the person was drunk, they assumed that he did that willfully. But Leocal said that's not a crime of violence because it wasn't an intentional application of force, if anyone were hit, if there were an accident. The same thing in Fernandez-Ruiz. It was a domestic violence assault statute, which could be had to require an intentional act, but the harm against the victim could be purely unintentional. And, again, the same thing as Nervais-Gomez, which I think is totally parallel to this case. Counsel, I'm looking back at Anderson. Yes. So on page 972, I'm a Pacific reporter, defendant concedes he committed a forcible act against Pamela, killing her, and the act was motivated by his intent to steal Pamela's property. What he had argued was that he didn't intend for her to fear, or he didn't intend to use force against her, but he did use force against her. Yes. So it almost is though California is saying as long as there's sort of a general intent here, you don't have to specifically intend that somebody fear you as you're taking their property. The force or fear does not have to be intentional. But he did use force against her. Yes, that's correct. I mean, because that's what changed it from a theft to a robbery. There is force. But that's not the question here. The question is, is that intentional? And when Anderson said that we hold that the intent, there is no intent for, to include the intent to apply force against the victim, that's precisely what is contrary to Leocal Fernandez-Ruiz and Nervais-Gomez, this Court's authority. Let me just dwell on Nervais-Gomez for a moment, because I believe those are two. You know, just to back up though, I mean, are we bound, even if everything you're saying about Anderson is correct, are we bound by Anderson to change our, I mean, could we even do that when the crime has already been held to be a categorical crime of violence? Absolutely, Your Honor. In fact, you are required, your duty under Miller is to follow Anderson, because Anderson is controlling law. I don't think Miller has a duty. I think Miller says if we find that there's been intervening controlling authority to the contrary, that compels the conclusion. Correct. If Anderson does have the effect that I'm saying it does under Johnson, that it is controlling law on all Federal courts, even the United States Supreme Court. Anderson is controlling over the United States Supreme Court, because it is a matter of State law. This Court is bound by it. If that's the case, then under Miller, this Court has a duty to not follow Bercero-Lopez, but to rule accordingly to Anderson. This Court is bound by that. And if, in fact, I would say we don't even have to go down the Miller route, because if the Court considered the 28J that I filed on the 23rd, I went into more detail on the fact that Bercero-Lopez didn't even talk about mental state. There's not a single mention of the word mental state, mens rea, or any of these cases, Lea, Cala, Fernandez, Ruiz. Bercero-Lopez simply didn't consider this. And under cases that I cited, Espinoza, Basses, Seven of Pete, Roman, and even Bercero-Lopez itself said when a case doesn't consider an argument raised in a subsequent appeal, it's not controlling on that point of law. That's the situation here. Bercero-Lopez did not consider mental state that's required for this offense, and so it's not controlling on this argument. This Court has to consider separately whether under Anderson, which says that 211 does not require an intentional application of force. But that's inconsistent with Supreme Court and circuit precedent. It's hard to read our language in Bercero-Lopez regarding the use of force in the course of an escape and look at the facts of Anderson and conclude that Anderson isn't squarely within what we said in our case. Well, since as far as I know, Bercero-Lopez doesn't say anything about what the mental state is associated with that. Again, we're looking at force. There is some additional force that applies to a robbery that elevates it above the fact. And we didn't say anything in Bercero-Lopez about that. We simply said that the force used in the course of escaping may convert theft into robbery.  If it's used. In the sense, use means active employment, as the Supreme Court said in Layakau. If it's active employment. It's hard to think of hitting the owner of the car with her own car on your way out of the parking lot as not an intentional use of force. Well, the Supreme Court of California said we assume that it is, that he didn't know she was behind the gate, that he crashed through the gate, and maybe he was reckless, but they said they didn't even consider whether it was reckless. They said it was simply accidental. That is usually negligent. That they said, assuming that even that it is negligent, as he claims, that it was accidental, that is still robbery under California law. But it is not a crime of violence. It is not extortion under federal law. That's the problem. That extortion requires the use of force. Use of force has been defined repeatedly in Layakau, in Fernandez-Ruiz, in Narvaez-Gomez. All those cases say there's a difference between a volitional act that sets the chain of motion and the intention to apply force or fear. That's what's missing. That's precisely what Anderson said is missing in 211. And just like the shooting at an inhabited dwelling in Narvaez-Gomez, shooting at the dwelling had to be intentional. In fact, the statute says it must be willful. But Narvaez-Gomez said that's not a crime of violence because the application of force can only be recklessly done. You don't have to intend to hit anybody with that bullet when you fire. Therefore, it's only reckless. It is not a crime of violence. The same thing here. You can commit. You have to do an intentional act to commit robbery. But if you don't intend to apply force or fear, it is not a crime of violence under Federal definitions. And that's exactly what Anderson said is the elements of 211 is it does not require an intent to apply force or fear against the victim. It can be done purely accidentally. All right. Thank you, counsel. Good morning. May it please the Court. Mark Rahe for the United States. Your Honors, in this case, this Court is not riding on a blank slate. As everybody knows, Bessara Lopez is squarely on point. The only way for this Court to ignore Bessara Lopez is to find out that somehow there's been an intervening decision that is clearly irreconcilable with its analysis, and that is not the case here. Although I didn't write the answering brief, when I took this case on a week ago, there is a huge analytical disconnect in the defense argument that this Court should be made aware of from the outset, and that is simply this. Leocal is completely inapplicable to the question at hand. Under the 201.2 guideline commentary notes, crime of violence includes 12 enumerated offenses, and then there's a residual clause, or any offense that has as an element use of force, threatened use of force, or attempted use of force. Leocal involved 18 U.S.C. 16, both sub-A and sub-B of that definition. Those definitions require as an element the use of force. This case does not. Generic robbery, when Bessara Lopez found that 211 is a crime of violence, it never reached the residual clause, and that was never at issue. It said it's a combination. It said it's either generic robbery, and to the only extent 211 isn't generic robbery, i.e., it reaches threats to property, it's generic extortion. There was no evidence whatsoever or no discussion of leocal, and I will send up a case in a Rule 28J letter. This Court, United States v. Gomez-Leon, 545F3rd at 789. This is a direct quote. Moreover, since the enumerated offenses approach does not require us to apply either the element test or the substantial risk use of force test, the underlying conviction need not be for an offense that involves the intentional use of force semicolon leocal does not apply, and there's good reason for that. Look at another example of an enumerated offense in the application notes, statutory rape. That's never had as an element the use of force, so by definition statutory rape doesn't have to satisfy leocal. Another example is burglary. It's well accepted burglary doesn't require use of force against anybody as an element. It's a crime against property. That is why when you talk about the 12 enumerated offenses which are at issue here, leocal isn't even applicable. So how could Anderson, whatever Anderson, I'm not even going to get to Anderson for another minute or two, whatever it says it can't possibly be clearly irreconcilable with Becerra-Lopez. My next point. Defense, what they want to attach on to is this definition of extortion. The generic definition of extortion is a wrongful taking a property by use of force, comma, fear, comma, or threats. That's the definition from the Shidler case that's quoted in Becerra-Lopez. It comes at the beginning of the defense brief, and then suddenly for the rest of that brief and this entire argument they ignore the last two words. My opponent said a few minutes ago extortion requires the use of force. That's categorically wrong. Extortion reaches blackmail. You can threaten to uncover dirty pictures of somebody or one of their secrets or threaten to boycott their business. It doesn't require any force at all. It's one of three different ways to commit extortion. So, again, whatever Anderson had to say about the crime, how could it be clearly reconcilable with Becerra-Lopez? And finally, getting to Anderson itself now, nothing in Anderson at any point says we therefore reverse an understanding of robbery under California law for the last 20 years. No, what all they said was it's a new claim, there's no heretofore unidentified element of intending to apply force or fear to the victim. If Anderson doesn't change the law, again, even under the Miller v. Gamney test advanced by my opponent, there's no way it can be said that it's clearly irreconcilable with Becerra-Lopez. That Miller v. Gamney standard, this Court sees it all the time. Whenever there's a new decision that comes out, surely one party to a dispute will often say this new case casts doubt on prior law. But I think even under Miller v. Gamney itself, at some point in there it says it's not enough merely to cast doubt upon. It's a high standard. It has to be clearly irreconcilable. So here, if you have an entire argument that's based on Lee account that doesn't even apply, you have an argument based on an understanding of extortion, which doesn't even fully stay true to the three-part definition of extortion, how can that high standard be met? The government's position is clear, then. This Court should continue to find that Becerra-Lopez still controls. And to even go down the rabbit hole, the last thing I'll say, my favorite quote in the opening brief was where the defense says, at no point in Becerra-Lopez does this Court ever mention Leocal, Fernandez-Ruiz, or Narvaez-Gomez. And there's a great reason for that. Not one of those three cases involved an enumerated offense. Leocal, again, was about 18 U.S.C. 16. Fernandez-Ruiz, the same thing. And Narvaez-Gomez, I believe the crime was either negligent or accidental discharge of a firearm from a vehicle. That is not an enumerated offense under the commentary notes of 201.2. That's why in that case the government had to go under the residual clause, i.e., it had to satisfy Leocal because it couldn't the result was adverse to the government there. Such is not the case here. And unless this Court has any further questions, the government would submit. All right. Thank you, counsel. You're over your time, but I will give you a minute to rebut. Thank you. I just need to address the one point about the enumerated offense, red herring, which the government has just raised for the first time, not in its briefs. Is that extortion, the generic, the specific generic definition of extortion is, as he quoted, use of force, fear, or threats. Use. It's not the force that's important here. It's the use. It's use requires active employment under Leocal. And there is no reason to believe that the words use of force is any different in the generic definition of extortion in the guidelines, in two different places in the guidelines, or in Section 16. In fact, Fernandez Ruiz said that the words use of force in or Narvaez Gomez said the words use of force are the same in the guidelines and in Leocal and in Section 16. There's no reason to believe that the use of force in extortion definition is any different. In fact, there's less reason, because the definition, the generic definition of extortion, is one that's cobbled together by contemporary law. Common law definition of extortion is completely different from our common blackmail. And so we have to, there's, in fact, Leocal and Fernandez Ruiz point out the words use of force are the common, ordinary meanings of those terms. We're not talking about specialized terms. And Fernandez Ruiz specifically says that use, though it theoretically could mean something accidental or less than intentional, they said that the most natural meaning of the word use is, as Leocal said, active employment. That's what's missing under Anderson. All right. Thank you, counsel. We will submit United States v. Flores-Mejia and take up Midland National and Ray Midland National.
judges: Fletcher, Wardlaw, Bybee